CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 17 2005

JOHN F. CORCORAN, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONNIE MCFARLIN, #237545, <br> Plaintiff, | ) <br> ) <br> ) |
| v. | )    Case No. 7:05-CV-00023 |
| K.J. BASSETT, et al., <br> Defendants. | ) <br> )    By:    Michael F. Urbanski <br> )    United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Donnie McFarlin, a Connecticut inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff is currently housed at Keen Mountain Correctional Center ("Keen Mountain"). In an Order dated April 7, 2005, this matter was referred to the undersigned magistrate judge for report and recommendation as to any dispositive motions. This matter is before the court for report and recommendation on defendants' motion for summary judgment (Docket No. 20).

Plaintiff raises a number of claims about the provision of the Common Fare diet at Keen Mountain. Plaintiff does not allege that he does not receive the diet; he instead alleges that he does not receive beverages and wheat bread called that the diet calls for, that Keen Mountain serves cooked vegetables instead of thawed vegetables, and that the diet is nutritionally inadequate. It is the recommendation of the undersigned that the court dismisses plaintiff's vegetable complaint because Keen Mountain has stopped cooking them; that the court refused to exercise supplemental jurisdiction over plaintiff's beverage and wheat bread claims because they appear to arise under state law; and that plaintiff's claim regarding nutrition be dismissed because although he alleges that he has missed 150 meals since being transferred to Keen

1

Mountain, he does not allege how defendant's behavior resulted in him having done so. The undersigned also recommends that defendant Bassett be dismissed from this action because plaintiff's only theory against her is respondeat superior, and that defendants' motion for qualified immunity be granted.

I

Plaintiff alleges that he is being denied the Common Fare diet necessitated by his Islamic religious beliefs. Plaintiff indicates that he has missed over one hundred meals and that he now weighs only 117 lbs. (Compl. at 4.) Plaintiff's complaint states generally that he is being denied his special meals. Review of materials provided with plaintiff's complaint shows that specifically, plaintiff is not complaining that he was denied access to the Common Fare diet per se, but instead that vegetables provided in it were cooked, that plaintiff did not get wheat bread during Ramadan, that the beverages are incorrect, and that the Common Fare portions and food are nutritionally inadequate. Id.

In affidavits attached to their motion for summary judgment, defendants contend that plaintiff has received the Common Fare diet and that the diet is consistent with the Virginia Department of Corrections Food Service Manual ("Food Service Manual"). In an affidavit, Warden Bassett testifies that although she manages the overall operation of Keen Mountain, she is not personally involved in the preparation and serving of the meals there. (Bassett Aff. ¶¶ 1, 5.) Bassett testifies that she relies on Keen Mountain food service staff to make sure that the Common Fare meals comply with the Food Service Manual. Id. ¶ 5.

In an affidavit, Defendant Oslin testifies that he is the Food Operations Director at Keen Mountain. (Oslin Aff. ¶ 1.) He states that the Food Service Manual states that hot entrees should

2

be offered three times a week, should be purchased precooked, and heated in designated Common Fare equipment. Id. ¶ 6. He indicates that while Keen Mountain had in the past heated the frozen vegetables provided to inmates as a part of the Common Fare diet, they have stopped heating them and now serve them thawed to assure compliance with the Common Fare diet's protocols. Id.

Oslin also addresses plaintiff's complaints regarding the specifics of the diet. Oslin states that the Food Service Manual does not state that inmates are to receive wheat bread only during Ramadan. Id. ¶ 7. Oslin states that the bread served to inmates on Common Fare does not have to be wheat, it only needs to be Kosher. Id. Oslin notes that the same beverages are given to inmates on the Common Fare diet as are given to inmates in the general population. Id. As such, inmates on the Common Fare diet are given 8 ounces of coffee and 16 ounces of juice everyday, and apple juice three times a week. Id.

Regarding plaintiff's arguments about food portions, Oslin states that plaintiff is given the measurement of food provided by the Food Service Manual on a daily basis. Id. ¶ 8. He states that McFarlin has been given the Common Fare diet since he signed the Common Fare Agreement, requiring him to abide by all of the requirements of the Common Fare program, excluding a sixty day period following June 7, 2005 when plaintiff was suspended from the program for a period of sixty days for having purchased from the commissary items which were in violation of the Common Fare diet. Id. at ¶¶ 9-10.[1]

---

[1] A review of the materials provided by defendants indicates that plaintiff was suspended from the program for purchasing chicken ramen noodles from the prison commissary. (See Institutional Classification Authority Hearing Form provided with Def.'s Mot. Summ. J.)

3

## II

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Ordinarily, a prisoner proceeding pro se in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings in order to withstand a motion for summary judgment by the defendants that is supported by affidavits containing a conflicting version of the facts. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). Thus, a pro se plaintiff's failure to file an opposing affidavit is not always necessary to withstand summary judgment. While the court must construe factual allegations in the nonmoving party's favor and treat them as true, however, the court need not treat the complaint's legal conclusions at true. See, e.g., Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted).

4

# III

### A. Plaintiff's Claim that His Vegetables Were Cooked Must Be Dismissed Because It Is Moot.

The court first addresses plaintiff's claim that his vegetables were cooked in contravention of the requirements of the Common Fare diet. In his affidavit, defendant Oslin indicates that Keen Mountain has now stopped cooking vegetables and thaws them as directed in the Food Service Manual.

First, because plaintiff alleges no physical injury arising out of this claim, his attempt to seek monetary recompense for it are barred. Section 1997e(e) of the Prison Litigation Reform Act of 1955 ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Accordingly, it is recommended that his claim for compensatory damages resulting the alleged seizure of plaintiff's document be dismissed. See Davis v. District of Columbia, 158 F.3d 1342 (D.C. Cir. 1998) (finding plaintiff's claims for compensatory and punitive damages barred by § 1997e(e)); Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559 (W.D. Va. 2000) (same). Because plaintiff can allege no physical injury arising specifically out of defendants' cooking his vegetables, his attempt to receive monetary damages for it are barred.

It is appropriate to dismiss this claim because there is no longer an active controversy regarding it. Defendant Oslin admits that when Keen Mountain became aware that they cooking the vegetables to thaw them made them non-compliant with the Common Fare diet, they began to thaw them. Cases where there are no longer active controversies are moot and not suitable for

5

review in federal court. See Arizonans for Official English v. Arizona, 520 U.S. 43, 68 (1997). "To qualify as a case fit for federal court adjudication, an actual controversy must be extant at all stages of review...." Id. at 67 (internal quotation marks and citations omitted). The Arizonans Court found moot a suit to enjoin a law requiring state employees to use only English after the sole plaintiff left state employment for the private sector. Id. at 68. In Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991), the Fourth Circuit found that a prisoner's request for injunctive relief from unlivable prison conditions became moot when he was transferred to another prison. Because plaintiff's claim regarding his vegetables being cooked is moot, this claim must be dismissed.

**B.     Plaintiff's Claim that He Did Not Receive Wheat Bread During Ramadan.**

Plaintiff's second claim is that he did not receive wheat bread during Ramadan, but instead received another type of bread. In his affidavit, defendant Oslin states that the Food Service Manual does not require wheat bread during Ramadan, but only that the bread served to inmates need be Kosher. (Oslin Aff. ¶ 7.) The court's review of the manual finds nothing either supporting or challenging this conclusion.[2]

The major complaint plaintiff lists in his complaint is that the prison officials have failed to give him the diet guaranteed by his participation in the Common Fare program. First, it is clear that Keen Mountain's failure to follow the Food Service Manual is not actionable under § 1983. See Waller v. Dep't of Social Servs., 901 F.2d 387, 392 (4th Cir. 1990). The court

---

[2] Regarding Ramadan, the Food Service Manual lists white and corn bread as unacceptable for substitution for inmates adhering to Nation of Islam beliefs. Id. at 44. The Manual also specifies that inmates who are to given a cold bag breakfast are to be given wheat bread. See id. at 43, 44.

6

declines to exercise supplemental jurisdiction over any such claim under state law. See 28 U.S.C. § 1367(c); Hinson v. Norwest Fin. South Carolina, Inc., 239 F.3d 611, 617 (4th Cir. 2001). Insofar as plaintiff states a state law claim, it is the recommendation of the undersigned that such claim be dismissed without prejudice.

Further, to receive protection from the First Amendment, a plaintiff must show that he sincerely holds religious beliefs and that his claims are rooted in a religious belief, not in "purely secular" concerns. Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 713-14 (1981); Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972). Neither defendants nor the court question the sincerity of plaintiff's beliefs. The problem, however, is that plaintiff has provided no evidence that his dietary demand for wheat, as opposed to Kosher, bread is rooted in religious belief. Plaintiff has provided no objective evidence of why Kosher bread is not religiously acceptable. Absent such evidence, plaintiff has not established that his claims are rooted in religious belief so as to invoke the protection of the First Amendment.

The crux of this claim seems to be that plaintiff is not satisfied with Kosher bread. Without evidence as to why Kosher bread is religiously unacceptable, such a complaint does not establish a cognizable claim. Accordingly, it is the recommendation of the undersigned that summary judgment regarding this claim is warranted.

### C. Plaintiff's Claim regarding Beverages.

Plaintiff's next claim is that he does not receive proper juice with his breakfast. In his affidavit, defendant Oslin states that the Common Fare diet allows beverages, including breakfast drinks, to be the same ones provided to the general population. (Oslin Aff. ¶ 7.)

Plaintiff has in no way asserted how Keen Mountain officials' failure to provide him with

7

juice violates his rights guaranteed by the federal constitution. It may be that this claim is under state law: that plaintiff does not receive juice as frequently as his agreement for the Common Fare diet program directs.

Insofar as plaintiff claims that Keen Mountain officials are violating the Common Law diet program, the court should dismiss the claim. First, it is clear that Keen Mountain's failure to follow the Food Service Manual is not actionable under § 1983. See Waller v. Dep't of Social Servs., 901 F.2d 387, 392 (4th Cir. 1990). The court declines to exercise supplemental jurisdiction over any such claim under state law. See 28 U.S.C. § 1367(c); Hinson v. Norwest Fin. South Carolina, Inc., 239 F.3d 611, 617 (4th Cir. 2001). As such, insofar as plaintiff states a state law claim, it is the recommendation of the undersigned that such claim be dismissed without prejudice.

### D. Plaintiff's Claim that the Common Fare diet Is Nutritionally Inadequate.

Plaintiff's final claim is that he is being denied the Common Fare diet, as implemented by Keen Mountain, is nutritionally inadequate. In his affidavit, defendant Oslin states that the Food Service Manual not only lists the foods to be provided, but also specifies the portion sizes necessary such that inmates meet daily nutritional requirements. (Oslin Aff. ¶ 8.) Plaintiff's claim is analyzed as whether it violates the Eighth Amendment to the U.S. Constitution's prohibition on cruel and unusual punishment.

For a claim pursuant to the Eighth Amendment to the United States Constitution to survive a motion to dismiss, a prisoner must allege facts suggesting defendants knew and disregarded a substantial risk to the prisoner's health and safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In order to allege an Eighth Amendment claim, an inmate must allege that he

8

was subjected to an unnecessary and wanton infliction of pain, see Wilson v. Seiter, 501 U.S. 294, 298 (1991), "contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). A two-part test is used to determine whether the deprivation presented constituted a constitutional violation. The prisoner must show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). The first showing requires the court to determine whether the deprivation of a basic human need was objectively "sufficiently serious" while the second requires it to determine whether the officials subjectively acted with a "sufficiently culpable state of mind." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993).

It is clear that plaintiff alleges that he has lost weight during his confinement at Keen Mountain. He alleges, however, that this weight loss is a result of his missing meals without connecting this with defendant's behavior. In turn, defendants respond that the diet plaintiff receives accords with the Food Service Manual, and that the Common Fare diet has been available for the whole of the time since plaintiff signed up for it excluding a brief period after this complaint was filed where plaintiff was removed from the program for having purchased chicken ramen noodles, a non-approved food.

Given defendant's response, plaintiff's claim fails under the second prong of the Strickler analysis. Although access to food is a basic human need, because the diet provided by defendants accords with the Food Service Manual, prison officials lack a sufficiently culpable state of mind. Plaintiff alleges that he has missed 150 meals but does not specify how defendants have caused him to do so. Plaintiff does not show a violation of his rights under the U.S. Constitution. As such, it is the recommendation of the undersigned that defendant's motion for

9

summary judgment be granted regarding this claim.

### E. Defendant Bassett Should Be Dismissed from This Action Because Plaintiff's Claims Against Her Are Premised on Liability through Respondeat Superior.

Plaintiff's complaint does not directly implicate Warden Bassett in any of act of decisionmaking. Although she is in charge of the institution, Bassett does not prepare the meals or determine the nutritional requirements for the diet. Preparation of the Common Fare diet is the responsibility of defendant Oslin and his staff. (Oslin Aff. ¶ 1; Bassett Aff. ¶¶ 1, 5.) As plaintiff does not allege that defendant Bassett has any direct participation in the actions of which plaintiff complains, plaintiff's only basis for suit is respondeat superior, which is not available as a theory of liability in actions brought under 42 U.S.C. § 1983. Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). As such, defendant Bassett should be dismissed from this action.

### F. Defendants Are Entitled to Qualified Immunity.

Defendants also assert qualified immunity in their motion for summary judgment. Where constitutional issues are involved and an area of the law is unsettled, it is proper to examine whether officials are protected by the doctrine of qualified immunity. When there are no genuine issues of fact, courts are encouraged to deal with qualified immunity defenses at the summary judgment stage so that officials might be spared the burdens of liability and litigation when appropriate. See Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815-19 (1982)). When examining the issue of qualified immunity, a court must (a) identify the specific right allegedly violated; and (2) determine whether, at the time of the alleged violation, the right was so clearly established that a reasonable person in the official's position would have recognized the illegality of his actions. See id. at 312.

10

Case 7:05-cv-00023-SGW-mfu Document 27 Filed 08/17/05 Page 10 of 12 Pageid#: 162

Here, the specific right at issue appears to be whether a particular prison's implementation of Virginia's Common Fare diet program violates an inmate's constitutional rights. The court must address whether at the time of the alleged violation this right was so clearly established that a reasonable person in a prison official's position would recognize the illegality of their actions. In order to support a denial of qualified immunity, a court need not point to an already-litigated case involving the same or very similar facts. See Hope v. Pelzer, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.") Rather, the question for the court is whether the "contours" of the right have been fleshed out to a degree capable of giving an officer "fair warning" that the action he was preparing to take would violate the constitutional rights of prospective plaintiffs. See id.

When gauging the awareness of an official, a court should look to the decisions of the U.S. Supreme Court, the relevant U.S. Court of Appeals, and the highest state court of the state in which the court sits. Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998). Neither the Supreme Court, nor the Fourth Circuit, nor any Virginia state court has declared that Virginia's Common Fare diet program is per se unconstitututional. This provides support for the notion that defendant did not have the "fair warning" envisioned in Hope to the need to provide plaintiff the "Common Fare" diet given the factual allegations which cast suspicion on the sincerity of plaintiff's religious faith. As such, defendants are entitled to qualified immunity, and plaintiff's claim for monetary damages is dismissed.

## IV

The Clerk of the Court is directed immediately to transmit the record in this case to the

11

Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to filed specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to plaintiff and counsel of record.

**ENTER:** This 17th day of August, 2005.

UNITED STATES MAGISTRATE JUDGE